## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KELLY J. WISE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-236-F |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kelly J. Wise seeks judicial review of the final decision by the Defendant Commissioner denying Ms. Wise's application for disability insurance benefits and supplemental security income benefits (SSI benefits). This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.   Procedural History

Plaintiff filed applications for disability insurance benefits and SSI benefits alleging an inability to work since February 1, 2001, based on residual problems from previous

cervical fusions and right rotator cuff repair.  AR 19, 45-47, 72-81.[1]  The application was

denied on initial consideration and on reconsideration at the administrative level.  AR 33-34.

Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law

judge (ALJ) on February 27, 2004.  AR 345-363.  Plaintiff appeared in person and with her

attorney, and offered testimony in support of her application.  The ALJ issued his decision

on June 24, 2004, finding that Plaintiff was not disabled within the meaning of the Social

Security Act and therefore not entitled to disability insurance or SSI benefits.  AR 15-26.

The Appeals Council denied Plaintiff's request for review on January 12, 2005, making the

ALJ's decision the final decision of the Commissioner.  AR 5-7.  Plaintiff then appealed to

this Court.

II.     **The ALJ's Disability Determination**

        The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520

and 20 C.F.R. § 416.920.  First, the ALJ concluded that Plaintiff has not engaged in

substantial gainful activity since the alleged onset of disability.  AR 19, 25.  At step two, the

ALJ determined that Plaintiff suffers from severe impairments including chronic pain

---

[1]Plaintiff did not claim depression as a disabling condition in her initial application for benefits.  In response to the question, "What are the illnesses, injuries or conditions that limit your ability to work?" she responded, "I have had 2 fusion surgeries, with metal plating in my neck.  I can't lift above my shoulders.  I have sharp pain in my neck, shoulders, arms.  I have numbness in arms and hands.  I have severe migraines.  I have constant neck pain."  AR 73.  In the "Remarks" section of the Disability Supplemental Interview Outline, however, Plaintiff stated, "Since my condition got worse[,] I have been very depressed.  I have been put on medication."  AR 95.  At the hearing before the ALJ, Plaintiff testified that she is subject to anxiety attacks and that she had "had a nervous breakdown."  AR 355.  In the Findings section of his Decision, the ALJ included depression in his step two list of severe impairments.

secondary to cervical spinal cord impingement, right shoulder impingement, and depression. AR 21, 25. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 21-22, 25.

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work with additional limitations including "sitting of about 20 minutes at a time before a position change, no lifting above shoulder level, no repetitive cervical spine motion, no working around hazards or at height, and no more than occasional use of the dominant, right upper extremity." AR 23, 25. The ALJ also stated that "[i]f someone can do light work, we determine that she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods." AR 23. Based on this RFC, the ALJ determined that Plaintiff cannot return to her past relevant work as waitress, certified nursing assistant and laborer. AR 23, 25. The ALJ stated that Plaintiff's past occupations all require "light to medium exertional level." AR 23.

At that point, the ALJ did not take testimony from a vocational expert to determine the implications of Plaintiff's nonexertional limitations. Rather, the ALJ relied on the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations (grids) as a "framework," and found that Plaintiff, a younger individual with a tenth grade education and no transferrable skills, could perform "substantially all the requirements of light work," that her RFC does not "substantially erode the job base," and that "there are other jobs existing

in significant numbers in the national economy that the claimant can perform consistent with her residual functional capacity, and her age, education, and work experience." AR 24. The ALJ did not, however, identify any specific job Plaintiff can perform.

## III.   **Plaintiff's Claims Raised on Appeal**

Plaintiff raises four issues in this appeal. First, Plaintiff contends that the ALJ found Plaintiff's depression not to be severe and that this finding is not supported by substantial evidence. Second, Plaintiff contends that the ALJ found "no nonexertional limitations" and that this finding is not supported by substantial evidence. Further, Plaintiff contends that the ALJ's credibility assessment is not supported by substantial evidence. Finally, Plaintiff states that the Commissioner did not meet her step five burden of showing that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform.

## IV.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## V.   Analysis

### A.   ALJ's Findings as to Plaintiff's Depression

Plaintiff contends that "[t]he ALJ's conclusion that the Plaintiff's depression is not severe is not supported by substantial evidence." Plaintiff's Opening Brief at 4. In the Findings section of his Decision, however, the ALJ included depression in his step two list of severe impairments. AR 25. In the body of his Decision, the ALJ summarized Plaintiff's mental impairments as follows:

> Ms. Wise was treated for depression by general practitioners through the medical record with Paxil, Valium, Zoloft and Celexa. However, the record failed to document ongoing psychotherapeutic treatment of severe, intractable depression or anxiety that debilitated the claimant from daily activities of interest. Ms. Wise held part time jobs at a Pizza Hut and a Subway, cared for her children and maintained her home during times of depression. The claimant's emotional deficits did not rise to Listings-level severity as compared to the requirements found at Listings, § 12.04 and 12.06. None of the B Criteria for that listing are met above the "mild" level and the C criteria are not approached.

AR 22.

Dr. Sally Varghese, a medical consultant, completed a Psychiatric Review Technique form on April 8, 2003. AR 250-263. Dr. Varghese concluded that Plaintiff's depression, an affective disorder listed at 12.04, is not severe. AR 250. Dr. Varghese rated Plaintiff's functional limitations as they relate to the "B" Criteria of the Listings as mild or none.

Specifically, Dr. Varghese found no restriction of activities of daily living and no episodes of decompensation.  She found only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  AR 260.

Plaintiff relies on two GAF[2] assessments of 50[3] to support her contention that her depression is both severe and limiting.  These assessments were made on two separate occasions, once when Plaintiff sought outpatient treatment at the Western State Psychiatric Center on October 9, 2002, and once on January 7, 2004, when she sought treatment at the Jim Taliaferro Community Mental Health Center.  AR 315, 323.[4]  A low GAF score standing alone, however, does not automatically support a finding that an impairment seriously interferes with a claimant's ability to work.  *See Seymore v. Apfel*, No. 97-5068, 1997 WL 755386 at *2 (10th Cir. Dec. 8, 1997) (GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work) (unpublished

---

[2]The global assessment of functioning scale ("GAF") is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32.

[3]A GAF of 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shop-lifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th Ed. 2000) at 34.

[4]Plaintiff's first treatment at the Western State Psychiatric Center was for anxiety disorder on November 19, 1999, before her alleged onset date.  At that time, she was assessed with a GAF of 55.  This assessment is not relevant as it was made before Plaintiff's alleged onset date.

op.).[5]  *See also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)

("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is

not essential to the RFC's accuracy.");  *Camp v. Barnhart*, No. 03- 7132, 2004 WL 1465777,

at *1 (10th Cir. Jun. 30, 2004) (citing *Howard* and concluding that a GAF of 50 "without

evidence that it impaired [the plaintiff's] ability to work, does not establish an impairment")

(unpublished op.); *Zachary v. Barnhart*, No. 03-7032, 2004 WL 790300, at *2 (10th Cir. Apr.

14, 2004) (quoting *Howard* and noting that ALJ was not required to discuss GAF scores).

Given the lack of ongoing psychotherapeutic treatment for depression, the lack of any

identified functional limitations related to depression, and the supporting evidence in Dr.

Varghese's report, there is substantial evidence in the record to support the ALJ's finding

that Plaintiff's depression resulted in no significant functional limitations.

## B.    ALJ's Findings as to Nonexertional Limitations

Plaintiff states that "the ALJ's finding of no nonexertional limitations is not supported

by substantial evidence."  Plaintiff's Opening Brief at 5.  Plaintiff is referring to the ALJ's

findings that her chronic pain and depression are severe medically determinable impairments.

According to Plaintiff, the ALJ's finding that "[t]he claimant's capacity for light work is

substantially intact and has not been compromised by any nonexertional limitations" is

contradicted by the ALJ's findings at step two that "[t]he claimant's chronic pain secondary

to cervical spinal cord impingement, right shoulder impingement and depression are severe

_____

[5]All unpublished decisions are cited for their persuasive value pursuant to Tenth Circuit Rule
36.3.

medically determinable impairments."  *See* Plaintiff's Opening Brief at 5-6 (quoting the ALJ's Decision at 25).

In fact, however, the ALJ found that Plaintiff has several nonexertional limitations.[6] The ALJ stated that Plaintiff's ability to perform light work is subject to the following limitations:

> sitting of about 20 minutes at a time before a position change, no lifting above the shoulder level, no repetitive cervical spine motion, no working around hazards or at height, and no more than occasional use of the dominant, right upper extremity.

AR 23.

As discussed in further detail below, the ALJ's failure at step five to consider the extent to which the occupational base is eroded by Plaintiff's nonexertional limitations requires remand.

### C.     ALJ's Credibility Assessment

Plaintiff contends that the ALJ's credibility assessment is not supported by substantial evidence.  Generally, "special deference is . . . afforded a trier of fact who makes a credibility finding."  *Williams v. Bowen*,  844 F.2d 748, 755 (10th Cir. 1988).  "The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is

---

[6]Nonexertional limitations include both mental limitations and physical limitations. "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength[.]"  SSR 96-8P, 1996 WL 374184 at *6.  Nonexertional capacity "assesses an individuals's abilities to perform physical activities such as postural (e.g., stooping, climbing) [and] manipulative (e.g., reaching, handling).  *Id.*

conducting the hearing, is invaluable, and should not be discarded lightly." *Id.* (citations omitted). Nevertheless, the Tenth Circuit Court of Appeals has condemned the practice of conclusory credibility findings in social security proceedings:

> [A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight.

*Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (conclusions in the guise of findings fail to inform the court "in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible").

In this case, the ALJ stated that he had "considered the residual effect of [Plaintiff's] shoulder surgery and ongoing situational depression regarding her chronic pain in assessing her residual functional capacity." AR 22. He determined, however, that "the [Plaintiff's] allegation of debilitating pain and depression is not well supported by the medical record and is not wholly credible." AR 23. In support of his credibility finding, the ALJ noted that following the repair of her failed C3-4 fusion, Dr. Cesar "returned [Plaintiff] to work in August 2001 with only the restriction to no prolonged work above shoulder level." AR 22. *See also* AR 188. The ALJ further noted that even during the time period during which Plaintiff was living with a failed fusion at C3-4, Plaintiff could still lift up to 30 pounds. AR 22. Finally, the ALJ stated that Plaintiff was "not precluded from work activity for any

significant length of time through the medical record." *Id.* Here, the ALJ's credibility finding regarding Plaintiff's pain is affirmatively linked to substantial evidence in the record.

### D.   ALJ's Step Five Analysis

Plaintiff satisfied her burden of proving disability through step four of the sequential analysis. The ALJ determined that Plaintiff cannot return to her past relevant work because her exertional limitations limit her to some light and sedentary work. At step five, "the burden shifts to the [agency] to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) and 42 U.S.C. § 423(d)(2)(A)). In making the step five determination, "an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson* at 1488. The Tenth Circuit has held that "[w]ithout the grids, the ALJ must resort to testimony from a vocational expert to establish that a significant number of jobs exist in the national economy which the claimant can perform." *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992).

In this case, the ALJ found that Plaintiff was limited to light and sedentary work and clearly specified additional nonexertional limitations:

> sitting of about 20 minutes at a time before a position change, no lifting above the shoulder level, no repetitive cervical spine motion, no working around

hazards or at height, and no more than occasional use of the dominant, right
upper extremity.

AR 23.   These additional nonexertional limitations precluded the ALJ from conclusively

relying on the grids and raised a question as to the extent that the occupational base was

eroded by Plaintiff's nonexertional limitations.   Social Security Ruling 83-12, 1983 WL

31253 at 4, states that when an RFC is "compatible with the performance of either sedentary

or light work except that the person must alternate periods of sitting and standing," a

vocational source may be needed.   The ruling also notes that the "[l]oss of major use of an

upper extremity is rather definitive in that there is a considerable absence of functional

ability." *Id.*   When the ALJ determined that Plaintiff's ability to perform light and sedentary

work was diminished by the above-referenced nonexertional limitations, he should have

consulted a vocational resource.

> Where the extent of erosion of the occupational base is not clear, the
> adjudicator will need to consult a vocational resource.   The publications listed
> in sections 404.1566 and 416.966 of the regulations will be sufficient for
> relatively simple issues.   In more complex cases, a person or persons with
> specialized knowledge would be helpful.

SSR 83-12, 1983 WL 31253.   The ALJ neither sought testimony from a "person with

specialized knowledge" nor did he cite a publication listed in sections 404.1566 and 416.966

of the regulations.   Accordingly, the ALJ's finding that "there are jobs that exist in

significant numbers in the national economy that the claimant is able to perform," AR 24, is

not supported by substantial evidence.   It is therefore recommended that this case be reversed

and remanded for further proceedings at step five of the sequential evaluation process.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by May __18th__, 2006.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __28th__ day of April, 2006.


VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE